GOLD BENNETT CERA & SIDENER LLP
STEVEN O. SIDENER (State Bar No. 121062)
JOSEPH M. BARTON (State Bar No. 188441)
C. ANDREW DIRKSEN (State Bar No. 197378)
595 Market Street, Suite 2300
San Francisco, California 94105-2835
Telephone: (415) 777-2230
Facsimile: (415) 777-5189
E-mail: ssidener@gbcslaw.com
E-mail: jbarton@gbcslaw.com

Counsel for Plaintiff Chip-Tech, Ltd., Individually
And On Behalf of All Others Similarly Situated

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHIP-TECH, LTD., Individually and on Behalf of all Others Similarly Situated,

Plaintiff,

vs.

CYPRESS SEMICONDUCTOR CORPORATION; HITACHI, LTD.; HYNIX SEMICONDUCTOR, INC.; HYNIX SEMICONDUCTOR AMERICA, INC.; MICRON TECHNOLOGY, INC.; MITSUBISHI ELECTRIC CORPORATION; MITSUBISHI ELECTRIC & ELECTRONICS USA, INC.; NEC ELECTRONICS CORPORATION; NEC ELECTRONICS AMERICA, INC.; RENESAS TECHNOLOGY CORPORATION; RENESAS TECHNOLOGY AMERICA, INC.; SAMSUNG ELECTRONICS COMPANY, LTD.; SAMSUNG ELECTRONICS AMERICA, INC.; TOSHIBA CORPORATION; and TOSHIBA AMERICA ELECTRONIC COMPONENTS,

Defendants.

Case No. C 06 6698

**CLASS ACTION COMPLAINT**

**Jury Trial Demanded**

CLASS ACTION COMPLAINT

Plaintiff, individually and on behalf of a Class of all those similarly situated, brings this action for damages and injunctive relief under the antitrust laws of the United States against Defendants, demanding a trial by jury, and complaining and alleging as follows:

## NATURE OF THE CASE

1. This lawsuit is brought as a class action on behalf of all individuals and entities who directly purchased static random access memory ("SRAM") in the United States from Defendants, their predecessors or their controlled subsidiaries and affiliates from January 1, 1998 through September 30, 2006 (the "Class Period"). Plaintiff alleges that during the Class Period the Defendants conspired to fix, raise, maintain or stabilize prices of, and to restrict output for, SRAM sold in the United States and worldwide. Because of Defendants' unlawful conduct, Plaintiff and other Class members paid artificially inflated prices for SRAM and, as a result, have suffered antitrust injury to their business or property.

## JURISDICTION AND VENUE

2. This action is instituted under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to recover treble damages and costs of suit, including reasonable attorneys' fees, against Defendants for the injuries sustained by Plaintiff and the members of the Class by reason of the violations, as hereinafter alleged, of Section 1 of the Sherman Act, 15 U.S.C. § 1.

3. This action is also instituted to secure injunctive relief against Defendants to prevent them from further violations of Section 1 of the Sherman Act, as hereinafter alleged.

4. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1337 and by Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.

5. Venue is found in this district pursuant to Sections 4, 12 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 22 and 26 and 28 U.S.C. § 1391(b), (c) and (d). Venue is proper in this judicial district because during the Class Period one or more of the Defendants resided, transacted business, was found, or had agents in, this district, and because a substantial part of the events giving rise to Plaintiff's claims occurred, and a substantial portion of the affected interstate trade and commerce described below has been carried out in, this district.

//

#115487

6. Upon information and belief, Defendants maintain offices, have agents, transact business, or are found within this judicial district.

7. This Court has *in personam* jurisdiction over each of the Defendants because, *inter alia*, each Defendant: (a) transacted business in the United States; (b) directly or indirectly manufactured, sold, shipped and delivered substantial quantities of SRAM throughout the United States; (c) had substantial aggregate contacts with the United States as a whole; and/or (d) was engaged in an illegal price-fixing and output-limiting conspiracy that was directed at, and had the intended effect of causing injury to, persons and entities residing in, located in, or doing business throughout the United States, including in this district. Further jurisdictional facts as to certain foreign Defendants are alleged below.

## PLAINTIFF

8. Plaintiff Chip-Tech, Ltd. is a New York corporation with its principal place of business in Farmingdale, New York. Plaintiff purchased SRAM directly from one or more of the defendants during the Class Period, including Hitachi, NEC and Toshiba. The prices that Plaintiff paid to Defendants or their co-conspirators for SRAM were greater than they would have been absent the conspiracy herein alleged. As a result of the alleged conspiracy, Plaintiff was injured in its business and property by reason of the antitrust violations alleged herein.

## DEFENDANTS

9. Defendant Cypress Semiconductor Corporation ("Cypress Semiconductor") is a publicly traded technology company (NYSE: CY). It is a Delaware corporation headquartered at 198 Champion Court, San Jose, California 95134. Cypress Semiconductor manufactured, sold, and distributed SRAM throughout the United States during the Class Period.

10. Defendant Hitachi, Ltd. ("Hitachi") maintains its head offices at 6-6, Marunouchi 1-Chome, Chiyoda-ku, Tokyo, 100-8280 Japan. Hitachi manufactured, sold, and distributed SRAM throughout the United States during the Class Period.

11. Defendant Hynix Semiconductor, Inc. maintains its head offices at SAN 136-1, Ami-Ri Bubal-eub, Ichon-si, Kyoungki-do, Korea. Hynix Semiconductor, Inc. manufactured, sold, and distributed SRAM throughout the United States during the Class Period.

12. Defendant Hynix Semiconductor America, Inc. is a California corporation located at 3101 North First Street, San Jose, California 95134. Hynix Semiconductor America, Inc. is a wholly owned and controlled subsidiary of Defendant Hynix Semiconductor, Inc. (hereinafter collectively referred to as "Hynix"). Hynix Semiconductor America, Inc. manufactured, sold, and distributed SRAM throughout the United States during the Class Period.

13. Defendant Micron Technology, Inc. ("Micron") is a Delaware corporation with its principal place of business at 8000 South Federal Way, Boise, Idaho 83707. It is a publicly traded company (NYSE: MU). Micron manufactured, sold, and distributed SRAM throughout the United States during the Class Period.

14. Defendant Mitsubishi Electric Corporation is a Japanese corporation with its principal place of business at 2-7-3, Marunouchi, Chyoda-ku, Tokyo 100-8310, Japan. Mitsubishi Electric Corporation manufactured, sold, and distributed SRAM throughout the United States during the Class Period.

15. Defendant Mitsubishi Electric & Electronics USA, Inc. is a wholly owned subsidiary of Mitsubishi Electric Corporation and is located at 6556 Plaza Drive, P.O. Box 6007, Cypress, California, 90630. Mitsubishi Electric & Electronics USA, Inc. manufactured, sold, and distributed SRAM throughout the United States during the Class Period.

16. Defendants Mitsubishi Electric Corporation and Mitsubishi Electric & Electronics USA, Inc. are collectively referred to herein as "Mitsubishi."

17. Defendant NEC Electronics Corporation separated from its parent NEC Corporation on November 1, 2002. NEC Electronics Corporation maintains its head offices at 1753 Shimonumabe, Nakahara-Ku, kawasaki, Kanagawa 211-8668 Japan. NEC Electronics Corporation manufactured, sold, and distributed SRAM throughout the United States during the Class Period.

18. Defendant NEC Electronics America, Inc. maintains its corporate headquarters at 2880 Scott Boulevard, Santa Clara, California 95050-2554 and its manufacturing plant in Roseville, California. It is a wholly-owned subsidiary of NEC Electronics Corporation. NEC Electronics America, Inc. manufactured, sold, and distributed SRAM throughout the United

1  States during the Class Period.

2  19.  Defendants NEC Electronics Corporation and NEC Electronics America, Inc. are collectively referred to herein as "NEC."

3  20.  Defendant Renesas Technology Corporation is located at 4-1, Marunouchi 2-chrome, Chiyoda-ku, Tokyo 100-6334, Japan. In April 2003, Mitsubishi's SRAM business was spun off and transferred to Renesas Technology Corp., which is one of Mitsubishi's affiliated companies in which Mitsubishi holds a large interest. Renesas Technology Corporation manufactured, sold, and distributed SRAM throughout the United States during the Class Period.

4  21.  Defendant Renesas Technology America, Inc. is located at 450 Holger Way, San Jose, California, 95134. Renesas Technology America, Inc. manufactured, sold, and distributed SRAM throughout the United States during the Class Period.

5  22.  Defendant Samsung Electronics Company, Ltd., a Korean corporation, maintains its executive offices at Samsung Main Building, 250-2 ga, Taepyung-ro Chung-gu, Seoul, Korea. Samsung Electronic Company, Ltd. manufactured, sold, and distributed SRAM throughout the United States during the Class Period.

6  23.  Defendant Samsung Electronics America, Inc. is a subsidiary of Samsung Electronics formed in 1977. Samsung Electronics America, Inc. manages the North American operation of Samsung Telecommunications America (mobile phones and telephone equipment), and maintains its headquarters at 105 Challenger Rd., Ridgefield Park, New Jersey 07660. Samsung Electronics America, Inc. manufactured, sold, and distributed SRAM throughout the United States during the Class Period.

7  24.  Defendants Samsung Electronics Company, Ltd. and Samsung Electronics America, Inc. are collectively referred to herein as "Samsung."

8  25.  Defendant Toshiba Corporation is located at 1-1 Shibaura, 1-chome Minato-ku, Tokyo 105-8001, Japan. During the Class Period, Toshiba Corporation manufactured, sold, and distributed SRAM throughout the United States during the Class Period.

9  26.  Defendant Toshiba America Electronic Components is located at 9775 Toledo Way, Irvine, California 92618. During the Class Period, Toshiba America Electronic

1 Components manufactured, sold, and distributed SRAM throughout the United States during the Class Period.

27. Defendants Toshiba Corporation and Toshiba America Electronic Components are collectively referred to herein as "Toshiba."

## CO-CONSPIRATORS

28. Various other persons, firms and corporations, not named as Defendants in this Complaint, have participated as co-conspirators with Defendants in the violations alleged herein, and have aided, abetted and performed acts and made statements in furtherance of the conspiracy.

## INTERSTATE AND FOREIGN TRADE AND COMMERCE

29. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

30. The activities of Defendants and their co-conspirators, as described in this Complaint, were within the flow of, and substantially affected, interstate and international commerce.

31. During the time period covered by this Complaint, Defendants and their co-conspirators sold and distributed SRAM to and throughout the United States.

32. Each of the Defendants and their co-conspirators used instrumentalities of interstate and/or foreign commerce to manufacture, sell, distribute and market SRAM.

33. Defendants and their co-conspirators manufactured, sold and shipped substantial quantities of SRAM in a continuous and uninterrupted flow of interstate and foreign commerce to customers located in states and nations other than the states and nations in which Defendants produced SRAM.

## CLASS ACTION ALLEGATIONS

34. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

35. Plaintiff brings this action on its own behalf and as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of all members of the following class:

> All persons who purchased SRAM in the United States directly from any of the Defendants, or any present or former parent, subsidiary or affiliate thereof, at any time during the period from January 1, 1998 through September 30, 2006. Excluded from the class are governmental entities, Defendants, other producers of SRAM, and the present and former parents, predecessors, subsidiaries and affiliates of the foregoing.

Plaintiff believes that there are hundreds, if not thousands, of Class members as above described, the exact number and identities being known only by Defendants.

36. The Class is so numerous and geographically dispersed that joinder of all members in impracticable.

37. There are questions of law and fact common to the Class. These common questions relate to the existence of the conspiracy alleged, and to the type and common pattern of injury sustained as a result thereof. The questions include but are not limited to:

    a. Whether Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain or stabilize prices of SRAM sold in the United States;

    b. The identity of the participants in the conspiracy;

    c. The duration of the conspiracy alleged in this Complaint and the nature and character of the acts performed by Defendants and their co-conspirators in furtherance of the conspiracy;

    d. Whether the alleged conspiracy violated Section 1 of the Sherman Act;

    e. Whether the conduct of Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business and property of Plaintiff and other members of the Class;

    f. The effect of Defendants' conspiracy on the prices of SRAM sold in the United States during the Class Period; and

    g. The appropriate measure of damages sustained by Plaintiff and other members of the Class.

38. Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of other Class members, and Plaintiff will fairly and adequately protect the interests of the members

1  of the Class. Plaintiff is a direct purchaser of SRAM from one or more of the Defendants,
2  including Hitachi, NEC and Toshiba. Plaintiff's interests are aligned with, and not antagonistic
3  to, those of the other members of the Class. In addition, Plaintiff is represented by competent
4  counsel experienced in the prosecution of antitrust and class action litigation.

5      39. The prosecution of separate actions by individual members of the Class would
6  create a risk of inconsistent or varying adjudications, establishing incompatible standards of
7  conduct for Defendants.

8      40. Defendants have acted, and refused to act, on grounds generally applicable to the
9  Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

10     41. The questions of law and fact common to the members of the Class predominate
11 over any questions affecting only individual members, including legal and factual issues relating
12 to liability and damages.

13     42. A class action is superior to other available methods for the fair and efficient
14 adjudication of this controversy. The Class is readily definable and is one for which records exist
15 in the files of Defendants and their co-conspirators. Prosecution as a class action will eliminate
16 the possibility of repetitious litigation. Treatment as a class action will permit a large number of
17 similarly situated persons to adjudicate their common claims in a single forum simultaneously,
18 efficiently and without duplication of effort and expense that numerous individual actions would
19 engender. Class treatment will also permit the adjudication of relatively small claims by many
20 class members who otherwise could not afford to litigate an antitrust claim such as is asserted in
21 this Complaint. This class action presents no difficulties of management that would preclude its
22 maintenance as a class action.

23 **FACTUAL ALLEGATIONS REGARDING THE SRAM INDUSTRY**

24     43. SRAMs are integrated circuits that enable data to be digitally stored and retrieved
25 at high speeds. SRAM can support access times as low as 10 nanoseconds. SRAM is faster and
26 more reliable than the more common DRAM (dynamic random access memory). Unlike
27 DRAM, which must be periodically refreshed, SRAM will retain its content as long as it receives
28 power. SRAM is a different product than DRAM. Plaintiff asserts no claims herein with regard

1 | to DRAM.

2 | 44. SRAM comes in a variety of sizes, process technologies, access speeds, and densities. Higher speed SRAMs serve as intermediate, or cache, memory in computer systems such as workstations and servers. Slower speed SRAMs serve as memory in products such as cellular telephones, pagers, and modems.

45. The SRAM industry is highly cyclical, with short product life cycles. Manufacturers sell SRAM with new and improved features at high margins until competitors provide product with the same features. As competitors introduce SRAMs with similar features on the market, the improved SRAM declines in price.

46. The worldwide SRAM annual revenue approaches $3 billion.

47. Between 1994 and 1997, there was an increase in the number of SRAM manufacturers selling SRAM in the United States. During the same time period, the amount of SRAM manufacturing capacity increased globally, and the prices of SRAM in the United States declined. The United States SRAM industry went from profitability to drastic losses.

### THE STRUCTURE OF THE SRAM INDUSTRY IS CONDUCIVE TO PRICE-FIXING

48. The SRAM industry has a number of structural and other characteristics that facilitate the implementation and maintenance of a horizontal price-fixing conspiracy such as that alleged by Plaintiff herein, specifically:

a. SRAM is a commodity product that is fungible in the sense that SRAM manufactured by any Defendant is substitutable with the SRAM manufactured by another Defendant. SRAM is a homogeneous product sold by Defendants and purchased by Plaintiff and members of the Classes primarily on the basis of price.

b. The SRAM industry in the United States is highly concentrated, facilitating coordination of SRAM prices among the major manufacturers thereof. During the Class Period, Defendants accounted for a large portion of all SRAM production in the United States.

//

      c.    There are substantial barriers to entry in the SRAM industry. Entry into the industry requires a substantial sunk investment and a significant period of time. The minimum viable scale of a new SRAM production facility is very large and extremely costly. Similarly, viable entry requires that a new producer capture a significant market share from existing producers. Thus entry is both expensive and risky. Moreover, overcapacity, as well as announced expansions by existing producers, served as additional deterrents to entry during the Class Period.

## THE SRAM ANTITRUST INVESTIGATION BY THE U.S. DEPARTMENT OF JUSTICE

49. On or about October 12, 2006, defendant Cypress Semiconductor confirmed that it had been notified by the Antitrust Division of the United States Department of Justice ("DOJ") that there was an investigation into anticompetitive activities in the SRAM market.

50. On or about October 13, 2006, defendant Samsung received a subpoena from the DOJ "regarding sales and marketing of SRAM products throughout the industry," according to a published report by Reuters.

51. On or about October 15, 2006, defendant Micron confirmed that it was cooperating with the DOJ's SRAM investigation.

52. On or about October 16, 2006, defendant Mitsubishi confirmed that it received a subpoena from the DOJ regarding sales of SRAM in the United States.

53. On or about October 17, 2006, defendant Toshiba announced that "Toshiba's American subsidiary, Toshiba America Electronics Components, has received a subpoena from the Department of Justice and is cooperating in what appears to be an industry-wide investigation."

## FRAUDULENT CONCEALMENT

54. Throughout the relevant period, defendants and their co-conspirators affirmatively and fraudulently concealed their unlawful conduct from Plaintiff.

55. Plaintiff did not discover, and could not have discovered through the exercise of reasonable diligence, that defendants and their co-conspirators were violating the antitrust laws

as alleged herein until shortly before this litigation was commenced. Nor could Plaintiff have discovered the violations earlier than that time because defendants and their co-conspirators conducted their conspiracy in secret, concealed the nature of their unlawful conduct and acts in furtherance thereof, attempted to confine information concerning the combination and conspiracy to high-level officials and fraudulently concealed their activities through various other means and methods designed to avoid detection.

56. Only on or about October 12, 2006, when news services announced that antitrust investigators were probing allegations of anticompetitive activities regarding SRAM was the existence of the conspiracy disclosed to the public. Plaintiff could not have discovered the unlawful conduct at an earlier date through the exercise of reasonable diligence because of defendants' and their co-conspirators' active and purposeful concealment of their unlawful activities.

57. Defendants and their co-conspirators engaged in an illegal price-fixing conspiracy with respect to SRAM, which they affirmatively concealed, in at least the following respects:

    a. By meeting secretly to discuss the prices and/or supply of SRAM sold in the U.S. and elsewhere;

    b. By agreeing among themselves at meetings and in communications not to discuss publicly, or otherwise reveal, the nature and substance of the acts and communications in furtherance of their illegal scheme; and

    c. By giving false and pretextual reasons for the pricing and/or supply of SRAM sold by them during the class period and by describing such pricing falsely as being the result of competitive factors rather than collusion.

58. As a result of defendants' and their co-conspirators' fraudulent concealment of their conspiracy, Plaintiff asserts the tolling of any applicable statute of limitations.

## VIOLATIONS ALLEGED

59. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of the Complaint.

//

60. Beginning at least as early as January 1, 1998 and continuing until September 30, 2006, the exact dates being unknown to Plaintiff, defendants and their co-conspirators engaged in a continuing agreement, understanding and conspiracy in restraint of trade to artificially raise, fix, maintain or stabilize prices for SRAM sold in the United States and/or to allocate among themselves their major customers, accounts or territories for the purpose of selling SRAM in violation of Section 1 of the Sherman Act, 15 U.S.C. §1.

61. The contract, combination and conspiracy consisted of a continuing agreement, understanding and concert of action among the defendants, the substantial terms of which were to fix, raise and maintain, or stabilize prices for SRAM in the United States and/or to allocate among themselves their major customers, accounts or territories for the purpose of selling SRAM.

62. Defendants and their co-conspirators have engaged in a continuing agreement, understanding and conspiracy in restraint of trade designed to raise the prices at which they sold SRAM to artificially inflated levels.

63. Defendants, through their officers, directors and employees, effectuated the aforesaid continuing agreement, understanding and conspiracy in restraint of trade between themselves and their co-conspirators by, among other things:

    a. participating in meetings and conversations, including through various trade associations and committees, to discuss the prices of and/or allocate the market for SRAM in the United States;

    b. agreeing, during those meetings and conversations, to manipulate prices and supply so as to boost sagging SRAM sales in a manner that deprived direct purchasers of free and open competition of SRAM sold in the United States;

    c. issuing price announcements and quotations in accordance with the agreements reached; and

    d. selling SRAM to customers in the United States at non-competitive prices.

64. The activities described above have been engaged in by defendants and their co-conspirators for the purpose of effectuating the unlawful arrangements to fix, maintain, raise

and/or stabilize SRAM prices in the United States.

## EFFECTS

65. The unlawful contract, combination or conspiracy alleged above had, *inter alia*, the following effects:

    a. Prices charged by Defendants and their co-conspirators to Plaintiff and the members of the Class for SRAM were maintained at artificially high and non-competitive levels; and

    b. Plaintiff and members of the Class were required to pay more for SRAM than they would have paid in a competitive marketplace, unfettered by Defendants' and their co-conspirators' collusive and unlawful price-fixing.

66. During and throughout the period of the contract, combination or conspiracy alleged above, Plaintiff and members of the Class directly purchased SRAM in the United States.

67. Plaintiff and the other Class members paid more for the SRAM that they purchased than they would have paid under conditions of free and open competition.

68. As a direct and proximate result of the illegal combination, contract or conspiracy alleged above, Plaintiff and the members of the Class were injured and financially damaged in their businesses and property, in amounts that are not presently determinable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays as follows:

    a. That the Court determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure.

    b. That the Court adjudge and decree that the contract, combination or conspiracy, and the acts done in furtherance thereof by defendants and their co-conspirators, be adjudged to have been a violation of Section 1 of the Sherman Act, 15 U.S.C. §1.

    c. That judgment be entered against defendants, jointly and severally.

    d. That judgment so entered be trebled in accordance with the antitrust laws.

    e. That defendants, their affiliates, successors, transferees, assignees, and the officers, directors, partners, agents and employees thereof, and all other persons acting or

claiming to act on their behalf, be permanently enjoined and restrained from continuing or maintaining the contract, combination or conspiracy alleged herein, or from engaging in any other contract, combination or conspiracy having a similar purpose or effect, and from adopting or following any practice, plan, program or device having a similar purpose or effect.

  f. That the Court award Plaintiff attorneys' fees and costs, and pre-judgment and post-judgment interest as permitted by law.

  g. That the Court award Plaintiff such other, further and different relief as the case may require and that the Court may deem just and proper under the circumstances.

## JURY TRIAL DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of all of the claims asserted in this Complaint so triable.

Dated: October 27, 2006    GOLD BENNETT CERA & SIDENER LLP

By: /s/ Joseph M. Barton
   Joseph M. Barton